**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

**PORTLAND DIVISION**

SCOTT P.,[1]

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Civ. No. 3:25-cv-00019-AA

**OPINION & ORDER**

---

AIKEN, District Judge:

Plaintiff Scott P. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

**BACKGROUND**

On October 17, 2018, and November 26, 2018, Plaintiff applied for Child's Insurance Benefits and Supplemental Security Income, respectively. Tr. 15, ECF No. 7. In both applications, Plaintiff alleged disability beginning September 24, 1995, when he was four years old. *Id.* On November 25, 2008, Plaintiff attained age 18. Tr. 18. On September 24, 2021, an Administrative Law Judge ("ALJ") issued a

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

decision finding Plaintiff not disabled. Tr. 12–45. On September 13, 2022, the Appeals Council denied review. Tr. 3. Plaintiff then appealed to the district court, and, on January 3, 2024, that court remanded the case for further consideration. Tr. 2561–93; Case No. 3:23-CV-00148-SB. On September 20, 2024, another hearing was held. Tr. 2467–2511. On October 21, 2024, the ALJ issued a decision finding that Plaintiff "has not been under a disability . . . from September 24, 1995, through the date of this decision." Tr. 2457, 2424–57. Plaintiff did not file Written Exceptions to the ALJ's decision, and the Appeals Council did not review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724–25; *see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953–54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1101.

## ALJ'S FINDINGS

The ALJ performed the five-step sequential analysis. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 24, 1995, the alleged onset date. Tr. 2430.

At step 2, the ALJ found that, for the child disability benefits claim, Plaintiff had the following severe impairment prior to attaining age 22: a learning disorder described as dysgraphia/impairment in written expression. Tr. 2430. And, for the supplemental security income claim, the ALJ found that Plaintiff has the following severe impairments: a lumbar spine condition, vestibular dysfunction, learning disorder described as processing speed and auditory-verbal memory impairment, generalized anxiety disorder, and headache/migraine. *Id.*

At step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 2432.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b)[2] except that:

> he can stand and walk four hours in an eight-hour day; he can occasionally climb ladders up to ten feet; he can never climb ropes and scaffolds; he can occasionally balance, stoop, kneel, crouch, and crawl; he must avoid concentrated exposure to work hazards, such as dangerous moving machinery and unprotected heights; he can perform work in moderate or quieter noise environments under normal ambient lighting conditions; he can understand remember and carry out simple and detailed instructions that can be learned in 30 days or less; he can have occasional contact with the general public, coworkers, and supervisors; he can perform work involving occasional changes in the work routine and setting.

Tr. 2437.

At step four, the ALJ found that Plaintiff "has no past relevant work." Tr. 2456. The ALJ also found that "[Plaintiff] has at least a high school education." *Id.* And the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy such as mailroom clerk, office helper, photocopy machine operator, collator operator, outside deliverer, and electrical accessory

[2] Under 20 C.F.R. §§ 404.1567(b) and 416.967(b) "[l]ight work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

assembler. Tr. 2456–57 (citing vocational expert testimony). Accordingly, the ALJ found that Plaintiff was not disabled. Tr. 2457.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision where it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, a court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, a court must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Finally, a court may not reverse an ALJ's decision due to an error that is harmless. *Stout v. Comm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff alleges that the ALJ erred by (1) improperly determining the RFC as to Plaintiff's vestibular dysfunction, Pl. Brief at 3, ECF No. 8; and (2) improperly determining the RFC as to Plaintiff's information processing impairment, *id.* at 13.

I. *Vestibular Dysfunction*

Plaintiff asserts that, in determining a light work RFC, the ALJ failed to account for Plaintiff's vestibular dysfunction symptoms of balance difficulties and lightheadedness. Pl. Brief 4–6.

A claimant's RFC is the most he can do in a work setting despite his limitations. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4. The ALJ determines a claimant's RFC based on all relevant evidence, including the objective medical and other evidence, and a claimant's statements about his symptoms and limitations. *Id.* The ALJ must determine and resolve any inconsistencies in the evidence. *Id.*

A. *The ALJ properly discounted Plaintiff's symptom testimony.*

The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 2439.

To determine whether a claimant's symptom testimony is credible, an ALJ must perform a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

2009). At the first step, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* At the second step, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives 'specific, clear and convincing reasons' for the rejection." *Id.*

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit or ignore the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's testimony, such as "prior inconsistent statements concerning the symptoms," "testimony . . . that appears less than candid," unexplained "failure to seek treatment or to follow a prescribed course of treatment," and a "claimant's daily activities." *Id.*

Plaintiff alleges that his vestibular dysfunction causes him to experience balancing difficulties and lightheadedness and limits his ability to work. Pl. Brief at 4–6. Plaintiff alleges that his vestibular dysfunction impacts his ability to "balance, stand, walk, lift, and carry." Pl. Brief at 1. Plaintiff alleged in his subjective complaints to medical providers that he has balancing difficulties. Tr. 2438, 2442.

Plaintiff also alleged in those complaints that he gets lightheaded when he works out, Tr. 2443, when he "tilts his head up/back[,]" Tr. 2097, and even when "sitting or getting up from sitting," Tr. 2093–94.

The ALJ acknowledged Plaintiff's reported vestibular dysfunction symptoms of balance difficulties and lightheadedness. As to balance difficulties, the ALJ recited Plaintiff's symptom testimony, and identified evidence of his subjective complaints to medical providers. Tr. 2438. The ALJ acknowledged that, based on Plaintiff's 2021 testimony, that "[Plaintiff] feels he cannot work because of neurodevelopmental issues, slow processing, difficulty receiving and absorbing information, an auditory processing disorder, *vestibular dysfunction with balance problems*, fatigue, chronic back pain, torn meniscus, extreme sensitivity to sound, calf pain at night, and anxiety." Tr. 2438 (emphasis added) (citing Hearing Testimony, July 21, 2021). And the ALJ acknowledged that Dr. Ginocchio stated that the "the claimant seems to have some balance issues . . . in that he is not able to squat." Tr. 2442.

As to lightheadedness, the ALJ recited Plaintiff's symptom testimony, and identified evidence of his subjective complaints to medical providers. Tr. 2093–2094. But Plaintiff contends that the ALJ "mischaracterized" or failed to fully consider Plaintiff's reported lightheadedness symptoms. Pl. Brief at 4–5. Though the ALJ considered Plaintiff's 2020 complaint to a provider that "he continues to get lightheaded routinely when working out," Plaintiff contends that the ALJ failed to consider Plaintiff's complaint that "lightheadedness . . . routinely occurs when he tilts

his head backward[,]" *id.* at 5 (citing Tr. 2097), and "even when sitting, or when getting up from sitting[,]." *id.* (citing Tr. 2093–94).

The ALJ found that Plaintiff's symptom reports were not consistent with his reported activities. Tr. 2444. To assess a claimant's subjective symptom reports and testimony, an ALJ considers "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). "[T]he ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.*

The ALJ determined that Plaintiff's symptom reports were inconsistent with his activities of playing basketball, hiking, traveling, riding his motorcycle, working on his car, lifting weights, and otherwise being active. Tr. 2444–45. The ALJ explained that "despite [Plaintiff's] allegations of difficulty moving and walking," he hikes, plays basketball, travels, lifts weights, rides a motorcycle close to home, works on his car, attends social functions, "tr[ies] to keep up with his girlfriend, whom he described as very active[,]" and travels frequently by plane and car with her. *Id.* The ALJ found that, in 2018, Plaintiff reported to a treatment provider that he was "very active" with a "great deal of traveling and hiking." Tr. 2444. The ALJ found that Plaintiff's alleged vestibular dysfunction difficulties were inconsistent with playing

basketball and riding a motorcycle. Tr. 860, 2444, 2445. The ALJ found that Plaintiff's reported limited tolerance of ear pressure was inconsistent with his many travels via airplane. Tr. 1089 ("went to New York, Boston, and Las Vegas [via airplane]"), 1431 ("flew to Palm Desert"), 2445.

On Plaintiff's prior appeal, the district court found the same inconsistencies. Tr. 2571–77 (providing long list of the inconsistencies between alleged vestibular dysfunction symptoms and Plaintiff's reported activities). The court determined "that substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on his reported activities." Tr. 2577.

In sum, the ALJ found that Plaintiff's reports as to the severity of his balance difficulties and lightheadness conflict with his activities, such as hiking, motorcycle riding, and playing basketball—activities that would cause him to tilt his head, sit, and change position.

Second, the ALJ also found that Plaintiff's symptom testimony conflicts with the objective medical evidence. Tr. 2442–45. "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id. at* 499. But "[t]o support a lack of credibility finding, the ALJ [i]s required to point to *specific facts* in the record." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis in *Burrell*).

Here, the ALJ considered objective medical evidence of vestibular dysfunction symptoms including balance difficulties and lightheadedness. As to vestibular dysfunction generally, the ALJ found that Plaintiff's reports of severely impaired balance and difficulty moving were inconsistent with examiner's findings of "normal and well-coordinated" gait, intact and symmetric muscle strength, normal station, normal "heel walking, toe walking and tandem gait[,]" "no evidence of significant problems with standing or walking," Tr. 2442. The ALJ noted that Dr. Ginocchio, M.D., diagnosed mild post traumatic encephalopathy in 2017 and found that "claimant seems to have some balance issues . . . in that he is not able to do a squat" but "explained that it is not a question of a loss of strength, but a question of being able to process leaning forward to properly do a squat." Tr. 2442. The ALJ noted that Dr. Natonson reported that Plaintiff is able to stand up from a seated position with arms crossed over his chest, is able to heel walk, toe walk, and walk in tandem normally, and that Plaintiff denied having serious difficulty walking or climbing stairs. Tr. 2444. The ALJ concluded that "[t]hese objective findings are not consistent with the claimant's testimony of disabling symptoms and demonstrate that despite his impairments he remains capable of light work as described above." Tr. 2442, 2444.

The ALJ found that "videonystagmography and oculomotor studies in February 2018 [showed] evidence of significant central vestibular dysfunction, with inadequate suppression of torsion swing," but that Plaintiff had negative tilt table test result in 2019. Tr. 2442–43. The ALJ explained that despite the negative tilt

table test, "[b]ecause the claimant continues to experience symptoms of this condition, the residual functional capacity contains appropriate limitations to account for vestibular dysfunction."

"[T]he ALJ can only reject the claimant's testimony about the severity of the symptoms if [he] gives 'specific, clear and convincing reasons' for the rejection." *Vasquez*, 572 F.3d at 592. Here, the ALJ explained that Plaintiff's reports as to the intensity, persistence and limiting effects of his vestibular dysfunction conflict with both his activities and with objective medical evidence. The Court concludes that the ALJ gave specific, clear, and convincing reasons for discounting Plaintiff's symptom reports.

B. *The ALJ properly determined Plaintiff's RFC to perform light work.*

The ALJ determined that Plaintiff has the RFC to perform light work with the following limitations:

> [H]e can stand and walk four hours in an eight-hour day. He can occasionally climb ladders up to ten feet. He can never climb ropes and scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to work hazards, such as dangerous moving machinery and unprotected heights.

Tr. 2437.

Plaintiff contends that the RFC does not sufficiently account for his vestibular dysfunction difficulties with balance and lightheadness. Pl. Brief at 4–5. Plaintiff contends that the RFC should include greater restrictions on balancing because "[P]laintiff faces the inherent risk of falling and being severely injured." *Id.* at 7. Plaintiff also contends that the RFC should include greater restrictions on

movements likely to cause lightheadedness such as "that routinely occurs when sitting, getting up from sitting, and tilting his head backward." *Id.* (citing Tr. 2093–94, 2097). And Plaintiff contends that he should not be required to lift and carry up to twenty pounds at a time because such work "is wholly incompatible with an individual suffering from balance issues and lightheadedness when tilting his head backwards, sitting, or changing positions from sitting to standing." *Id.* at 10. Plaintiff contends that "the apt exertional level for the RFC would have been a sedentary work capacity that is further reduced by enabling Phillips to perform this work without sitting in an upright position." *Id.*

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844–45 (9th Cir. 2001). "The RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, 1996 WL 374184, at *5 (emphasis in original). "Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone." *Id.* In all cases in which symptoms are alleged, the RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of . . . symptoms" and "a resolution of any inconsistencies in the evidence[,]" and it must logically explain "the effects of the symptoms . . . on the individual's ability to work[.]" *Id.*

Here, Plaintiff contends that the RFC fails to account for all of Plaintiff's balance and lightheadedness symptoms and is "inconsistent with the medical evidence, Plaintiff's statements, and the ALJ's own conclusions." Pl. Brief at 10–11. But, as explained above, the ALJ provided clear and convincing reasons for discounting Plaintiff's reports as to the severity of his symptoms. In determining the RFC, the ALJ properly considered and thoroughly discussed all relevant evidence, including the discounted symptom testimony, the objective medical evidence, and Plaintiff's reported daily activity levels.

A district court should affirm the ALJ's decision where it applies the correct legal standards and is supported by substantial evidence. *Andrews*, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The court's review is directed to the record as a whole and not merely to the evidence tending to support a finding. *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir. 1978). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews*, 53 F.3d at 1039. A court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Id.*

Here, the Court concludes that the ALJ applied the correct legal standard and provided substantial evidence to support his determination that, given Plaintiff's vestibular dysfunction and other impairments, Plaintiff can perform light work with certain limitations as the RFC prescribes.

C. *The ALJ complied with SSR 96-8p.*

Plaintiff contends that the ALJ erred by failing to provide sufficient detail in his RFC narrative, as required by SSR 96-8p. Pl. Brief at 10. Plaintiff contends that "the ALJ should have included all respective vestibular dysfunction-based limitations in order to define an RFC that fully mitigated the effects from this impairment." *Id.* at 12.

SSR 96-8p requires that an RFC assessment, "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. In cases in which symptoms are alleged, the RFC must "[c]ontain a thorough discussion and analysis of the objective . . . and other evidence, including the individual's . . . symptoms." *Id.* And it must "include a resolution of any inconsistencies in the evidence as a whole; and [s]et forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.* But "SSR 96-8p does not require an ALJ to thoroughly explain why they chose one limitation over another, for example, why they chose to limit a claimant to lifting twenty pounds, verses ten pounds[.]" *Tammy H. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-CV-00057-HL, 2024 WL 303808, at *4 (D. Or. Jan. 26, 2024).

Here, the ALJ provided a lengthy narrative that describes the relevant evidence and how it applied to determining the Plaintiff's RFC. Tr. 2437–56. As explained above, the ALJ carefully considered Plaintiff's symptoms of balance difficulties and lightheadedness and provided specific, clear, and convincing reasons

for discounting Plaintiff's reports. Tr. 2444–45. After reviewing the relevant evidence and resolving the inconsistencies, the ALJ explained that the "record as a whole . . . supports a finding that Plaintiff can do at least unskilled fulltime work with normal breaks." Tr. 2446–47. Among other relevant evidence, discussed above, the ALJ considered the State agency consultant determination that Plaintiff can do light work with occasional stoop, knee, crouch, and crawl. Tr. 2448. The ALJ explained that he found the consultant's determination of a more restrictive RFC "persuasive to the extent it support[ed] a restriction to less than a full range of light work," but less persuasive to the extent that it conflicts with Plaintiff's activities and the medical evidence. *Id.* The ALJ's lengthy narrative shows that the ALJ gave "[c]areful consideration" to Plaintiff's symptoms, provided a "thorough discussion and analysis of the . . . evidence," resolved the inconsistencies, and set forth a logical explanation of the effects of Plaintiff's symptoms on his ability to work based on the record as a whole, as required by SSR 96-8p. SSR 96-8p, 1996 WL 374184, at *5.

"The RFC assessment must include a discussion of why the reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Tammy H.*, 2024 WL 303808, at *4; *see also Tami A. v. O'Malley*, No. 3:23-CV-00067-MK, 2024 WL 1007892, at *3 (D. Or. Mar. 8, 2024) ("[I]it is the role of the ALJ to resolve conflicts and ambiguity in the evidence." (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999)). "The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence." *Tami A.*, 2024 WL 1007892, at *3.

The Court concludes that the ALJ provided substantial evidence to support the RFC and met the narrative discussion requirements of SSR 96-8p.

II. *Information Processing Impairment*

Plaintiff contends that "[t]he ALJ erred in forming the . . . RFC by failing to account for the full extent of Plaintiff's difficulties regarding instructions[.]" Pl. Brief at 13. Plaintiff contends that his mental impairments including difficulties with auditory processing and following instructions undermine his ability to perform work. *Id.*

A. *The ALJ properly considered Plaintiff's processing impairments.*

Plaintiff reported that he has difficulty processing auditory information and understanding complex instructions. Tr. 291, 1755, 2434, 2445. The RFC provides:

> [Plaintiff] can perform work in moderate or quieter noise environments under normal ambient lighting conditions. He can understand remember and carry out simple and detailed instructions that can be learned in 30 days or less. He can have occasional contact with the general public, coworkers, and supervisors. He can perform work involving occasional changes in the work routine and setting.

Tr. 2437.

The ALJ acknowledged Plaintiff's information processing and learning difficulties. The ALJ found that Plaintiff's symptom reports and the objective medical evidence support "a finding that the claimant has problems with sound, hearing, and loudness" and "difficulty with auditory processing," such that "written instructions are better determined that Plaintiff could understand, remember, and carry out detailed instructions." Tr. 2454. And the ALJ explained that "[t]he residual functional capacity contains specific provisions to account for this limitation." *Id.*

However, the ALJ explained that Plaintiff's reports as to the severity of his auditory processing difficulties conflict with Plaintiff's activities and with the objective medical evidence. Tr. 2446.

As to his activities, the ALJ found that Plaintiff's testimony of an inability to persist with tasks, Tr. 76–77, 80, 2446–47, conflicts with Plaintiff's other reports of persisting with long days of high school coursework, getting good grades in college courses such as chemistry, learning how to operate and ride motorcycles, and learning basic automotive repair from his uncles, Tr. 69–73, 2446–47. The ALJ found that Plaintiff's high school record, college coursework, simple automotive repair work, and learned motorcycle skills "all support the ability to do fulltime work" and "show he is able to persevere and maintain concentration, persistence, and pace [with at least unskilled work]." Tr. 2446. Plaintiff stated that, as to simple repetitive unskilled work, he "would have a problem with absorbing information because he would feel overwhelmed" and he would "need . . . 10-to-15-minute breaks regularly." Tr. 2447. The ALJ found Plaintiff's statements unpersuasive, Tr. 2447, given Plaintiff's demonstrated "ability to understand, remember, and apply information" to perform basic automotive repair, operate a motorcycle, and successfully complete advanced coursework, Tr. 2446.

The ALJ also found that the objective medical evidence conflicts with Plaintiff's reported difficulties. Tr. 2446. The ALJ explained that examiners repeatedly found that Plaintiff has normal communication ability. Tr. 2434, 2440, 2445 (citing Tr. 459 ("[Plaintiff] communicated using complex word sentences and demonstrated no overt

language difficulties. [He] showed adequate attention span and concentration, with little distractibility"), 684, 1449, 1483, 1495, 1501, 1504, 1507, 1510, 1513, 1515, 1518, 1521, 1523, 1526, 1529, 1532, 1535, 1538, 1540, 1543). The ALJ noted that although Dr. Anderson diagnosed neurodevelopmental disorders related to processing speed and auditory verbal memory impairment, he also reported that "claimant's [test] scores reflect academic abilities and component academic skills that are within normal limits for a person of his age[;]" and that "[Plaintiff] demonstrated reasonable ability to apply simple mathematical concepts to real-world situations." Tr. 2443. The ALJ found that, except for isolated auditory processing disorder diagnoses, Plaintiff's psychological tests over the years are largely normal, Tr. 2446, and that "[d]etailed neuropsychological examinations of record all show that the claimant tests between low average and high average in almost everything[,]" Tr. 2445. The ALJ found conflicting reports and results and cited testimony from Plaintiff's mother that "[Plaintiff] does not comprehend written material, but he can learn from a movie[,]" Tr. 2445, even though testing showed "above average performance in reading comprehension[,]" *id.*, and "reading comprehension score (at the 45th percentile)[,]" Tr. 2446. The ALJ found that Plaintiff's emails containing questions to Dr. Natonson "display intellectual, well-educated expression[,]" and, though short, they "show the claimant's intellect and writing ability." *Id.* Finally, the ALJ citied normal or mild findings on mental skills exams throughout the relevant period and concluded that the "objective findings are not consistent with

more restrictive limitations than those set forth in the residual functional capacity." *Id.*

The Court concludes that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's reports that he could not perform unskilled work that requires simple and detailed instructions that can be learned in 30 days or less.

In determining Plaintiff's RFC, the ALJ considered all relevant evidence, including Plaintiff's discounted symptom reports, his activities, and the objective medical evidence, including evidence from state agency consultants. Agency consultants determined that Plaintiff "can understand and remember short, simple, and routine step instructions[,]" "maintain and carry out simple and routine tasks," "is capable of appropriate coworker and supervisor interaction," and "is capable of responding appropriately to only occasional changes in the work setting." Tr. 2449. State agency psychological consultants, Dr. Ju and Dr. Boyd, found that "claimant was capable of 'understanding and remembering simple instructions' and could carry out and maintain concentration, . . . persistence, and pace for simple tasks." *Id.* The ALJ found the state consultant opinions unpersuasive to the extent they "provide greater limitations than set forth in the above residual functional capacity[,]" given Plaintiff's "demonstrated ability to learn and complete tasks in his daily life that supports the finding that he can understand, remember, and carry out simple *and detailed* instructions that can be learned in 30 days or less." *Id.* (emphasis added).

The ALJ thus properly considered all relevant evidence, applied the correct legal standard, and provided substantial evidence to support the determination that,

given Plaintiff's processing impairments and difficulty understanding instructions, Plaintiff can perform unskilled work that requires simple and detailed instructions that can be learned in 30 days or less.

B. *The ALJ properly defined unskilled work in formulating the RFC.*

Plaintiff contends that the ALJ erred by improperly defining unskilled work, specific vocational preparation work level 2 ("SVP 2"), as "work . . . taught by short demonstration." Pl. Brief at 16. Plaintiff contends that SVP 2 or unskilled work requires more instruction than short demonstration. *Id.* at 16–17. Plaintiff contends that he cannot perform unskilled or SVP 2 work because such work "involves 'anything beyond short demonstration up to and including 1 month [to learn],' and not 'short demonstration' as found by the ALJ." *Id.* (quoting Dictionary Of Occupational Titles Appendix C: Components of the Definition Trailer).

The Commissioner responds that Plaintiff is correct that unskilled or SVP 2 work is defined as "work that can take up to one month to learn." Def. Brief at 12, ECF No. 10. The Commissioner also agrees that the ALJ incorrectly defined SVP 2 work as work "taught by short demonstration only[.]" *Id.* (citing Tr. 2454). The Commissioner contends, however, that the error is harmless because the ALJ correctly defined SVP 2 or unskilled work in determining Plaintiff's RFC. *Id.* As reviewed above, the ALJ found unpersuasive the state agency consultant opinion that limited Plaintiff's RFC to simple instruction because Plaintiff had demonstrated that he could perform work (simple or detailed) that could be learned in 30 days or less, which accurately defines SVP 2 work. Tr. 2437, 2449. Further the vocational expert

identified a variety of occupations that were SVP 2, which the expert explained were unskilled in nature, only involved routine and repetitive tasks, and could be learned in 30 days or less. Tr. 2493–2500. Finally, the RFC provides that "[Plaintiff] can understand remember and carry out simple and detailed instructions that can be learned in 30 days or less[,]" which accurately defines SVP 2 work. Tr. 2437.

The Court concludes that the ALJ improperly defined SVP 2 work at one point in his analysis but that the error is harmless because the ALJ formulated the RFC based on the correct definition of SVP 2 work.

C. *The ALJ properly considered Plaintiff's adaptive functioning limitations.*

Plaintiff contends that the ALJ erred by failing to consider his limited ability to adapt to change in forming the RFC. Pl. Brief at 17. The RFC provides that "[Plaintiff] can perform work involving occasional changes in the work routine and setting." Tr. 2437.

Plaintiff contends that because of his processing difficulties, he cannot perform work that includes "occasional changes in the work routine and setting." Pl. Brief at 17. Plaintiff explains that this is so because "changes or modifications that are made regarding the work routine or setting are established via verbal or written instructions, and likely involve an employer's policies, procedures, processes, work settings, or environment." *Id.* at 17–18.

The ALJ noted that in 2020 an evaluation of Plaintiff's functional capabilities by Dr. Anderson noted "adaptive functioning concerns" based on a questionnaire completed by Plaintiff's mother. Tr. 2538. The ALJ explained that he found Dr.

Anderson's opinion unpersuasive because the concerns were derived from a questionnaire completed by "Plaintiff's mother reporting about [Plaintiff]." *Id.* The ALJ found that Dr. Anderson's reference to Plaintiff's functional capabilities "lacks support from her evaluation and is inconsistent with the record." *Id.* The ALJ also explained that Dr. Anderson's "reliance on unidentified subjective accounts is not persuasive."

In determining that Plaintiff has an RFC to "perform work involving occasional changes in the work routine and setting," the ALJ relied on the expert opinions of state agency psychological consultants, Dr. Ju and Dr. Boyd, who determined that Plaintiff could perform work that includes such occasional changes. Tr. 126, 144, 2448–49.

The Court concludes that the ALJ gave specific, clear, and convincing reasons for discounting Dr. Anderson's and Plaintiff's mother's evidence about the severity of his adaptive functioning difficulties. The Court also concludes that the ALJ provided substantial evidence for the RFC limiting Plaintiff "to no more than occasional changes in the work routine and setting."

D. *The ALJ properly considered Plaintiff's noise limitations.*

Plaintiff contends that the ALJ erred by failing to consider proper noise limitations. Pl. Brief at 18. The RFC provides that "[Plaintiff] can perform work in moderate or quieter noise environments under normal ambient lighting conditions." Tr. 2437.

Plaintiff contends that "[Plaintiff's] hearing problems . . . contribute to his inability to process verbal instructions" and that the ALJ's findings support a greater noise limitation. Pl. Brief at 18. Plaintiff contends that instead of a limitation to "moderate or quieter" noise levels, the findings support limiting noise levels to "less than the volume of the verbal instructions that [Plaintiff] receives." *Id.* Plaintiff contends that a moderate noise level is associated with "business offices where type writers are used; department stores; grocery stores; fast food restaurant at off-hours; and light traffic." *Id.* at 19 (citing Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix D, page D-2). Plaintiff maintains that a moderate noise level would "conflict with [Plaintiff's] capacity to understand the verbal instructions that would be at the same noise intensity level as the background noise." *Id.*

The ALJ acknowledged that noise affects Plaintiff's auditory processing. The ALJ explained that the "evidence supports a finding that the claimant has problems with sound, hearing, and loudness" and "difficulty with auditory processing, whereas written instructions are better." Tr. 2454. The ALJ relied on the functional assessments of state consultants Drs. Bernardo and Davenport who determined that Plaintiff "must avoid concentrated exposure to noise." Tr. 2249. The ALJ also relied on the recommendations of Dr. Polich, Ph.D., who conducted an auditory processing evaluation and "opined [Plaintiff] needs a quieter place to work." Tr. 2453 (citing Dr. Polich's recommendations). Dr. Polich recommend as optimal, but not imperative, a "comfortable supra-threshold" level of noise. *Id.*

Plaintiff contends that the ALJ erred by failing to incorporate into the RFC Dr. Polich's recommendation of a "comfortable supra-threshold" noise limitation. Pl. Brief at 18. However, Dr. Polich offered that recommendation and other recommendations for an *optimal* or preferred work environment. The ALJ cited Dr. Polich's "first recommendation . . . to improve the listening environment and make the signal stand out from the noise[;]" her "second recommendation . . . to provide focused auditory training[;]" and her "third recommendation . . . for workplace accommodations" such as written instructions for important projects" because that "would be beneficial." Tr. 2453. The context shows that Dr. Polich provided recommendations for an optimal, not imperative, work environment. An individual's RFC is the most, not the least, that a claimant can do despite the individual's limitations or impairments. SSR 96-8p, 1996 WL 374184, at *2; *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (distinguishing expert recommendation from expert opinion evidence). In contrast, state consultants Drs. Bernardo and Davenport provided the imperative "to avoid concentrated exposure to noise." The ALJ relied on that imperative, which is consistent with the RFC limiting work to "moderate or quieter noise environments." *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("An ALJ may rationally rely on specific imperatives regarding a claimant's limitations, rather than recommendations.").

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198.

Accordingly, the Court concludes that the RFC's noise limitation is based on substantial evidence.

III. *Denial of Disability Benefits*

The ALJ determined that Plaintiff was not disabled under the Act because, given the RFC limitations, he could perform jobs that exist in significant numbers in the national economy. Tr. 2456–57

The Court concludes that the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony as to the severity, intensity, and the limitations of his vestibular dysfunction and his information processing impairment. "[T]he 'clear and convincing' standard requires an ALJ to show [their] work[.]" *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (brackets in *Ferguson*) (quoting *Smartt*, 53 F.4th at 499). "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Id.* Here, the ALJ showed his work by identifying the subjective symptom testimony and the evidence that undermined it.

The Court also concludes that the ALJ did not err in determining Plaintiff's RFC because he considered all relevant evidence and resolved inconsistencies based on that evidence. The Court concludes that the ALJ applied the correct legal standards and that the ALJ's determinations are supported by substantial evidence. Accordingly, the Court affirms the ALJ's decision that Plaintiff is not disabled under the Act.

## CONCLUSION

For the reasons explained above, under sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED, and this case is DISMISSED. Final judgment shall be entered accordingly.

It is so ORDERED and DATED this ___30th___ day of September 2026.

/s/Ann Aiken
ANN AIKEN
United States District Judge